Mr. Bryant, we're happy to hear from you. Thank you. Thank you. Good morning, Your Honors, and may it please the Court, Patrick Bryant on behalf of Victor Castro-Aleman, the appellant in this case. This case presents a narrow issue with broad implications. In the context of a collateral challenge to a removal order, when the government asserts that the defendant has waived his right to appeal the order, the burden should be on the government to prove that assertion. That allocation of the burden comports with general waiver principles, is not inconsistent with the statute, and makes good sense for policy reasons. First, I'd like to turn to basic waiver principles. The basic principle is that the party asserting a waiver has the burden to prove it. In this case, if the appellant, Mr. Castro-Aleman, had simply said, I am excused from exhausting my administrative remedies because I was denied the right to appeal, and the government had said nothing, if it had just been silent at that point, then the court would move on to the additional steps, which suggests that it's the government's burden to overcome that statement from the party, the non-citizen, saying that he was denied the right to appeal, because it's the government coming forward. You agree the statute assigns him the burden, right? The statute under D, it assigns the defendant the burden, excuse me, the alien the burden. The ultimate burden of proving that the removal order was invalid. No, no, each of the three, D1, D2, and D3. That's correct. That he is assigned that burden with respect to each of those subparts. Yes. So you start by saying, well, if he just said, I was denied my right to appeal, that somehow that would, I mean, he couldn't just say that and satisfy the burden, right? Like, that's the conclusion that wouldn't get him anywhere, right? He has to provide some evidence, not the conclusion. Well, he would have to put it at issue, yes. Not put it at issue, it's his burden to prove it, right? So he would have to put some evidence in. We talked about what that might be, but he's got to put some evidence in on D1, D2, and D3. That's correct, and he did so here, but then it would be the government, if the government doesn't say anything then... Then he will have met his burden, and he would prevail. Right, and so the government then has to flip it, has to overcome it, and so that's why... That's not normally how we think about burdens, right? Don't we normally think that, you know, if, you know, in typical criminal case, right, the government bears the burden to prove knowledge, right? They put knowledge, evidence in. If the defendant wants to counter that, it doesn't become their burden, right? They can just counter that evidence, and they can try to defeat it, but we think of, like, affirmative defenses that defeat the element of the offense doesn't change the burden at all, right? That's just an attack on the evidence. Not the ultimate burden, but in the case of an affirmative defense, the defendant would have a burden of establishing the affirmative defense. Only if the affirmative defense is independent of the element alleged, right? So if what the affirmative defense is, is to show that your client didn't have knowledge, right, then there's no burden. That's just attacking an element of the offense, right? If you want to allege, you know, duress, right, that's a different affirmative defense, but this isn't an affirmative defense in that way, right? This is simply, you have the burden to prove that it was unavailable, and you could put on evidence that it was unavailable, and the government can respond to that by saying, no, it was available. I guess I don't understand why that is a distinct idea. Well, I think it would work the same way as, for example, discrimination claim, or a Batson claim, or the Bail Reform Act. So take a Batson claim as an example, right? So Batson, the court said repeatedly that the burden always remains on the defendant to prove the discrimination. There's a burden of production flip, right? So the second element in Batson has a burden of production, but Puckett tells us, like, it just has to be a facially neutral reason. There's no burden to prove the facially neutral reason, right? It's just a burden of production. The same thing in discrimination cases. McDonnell Douglas, right? The legitimate reason is just a burden of production. The actual burden remains with the criminal defendant in Batson and the civil plaintiff in the discrimination cases. Well, perhaps it's more of a theoretical difference between a burden of production and a burden of proof. I think in the Batson context, where the government would have to come forward with a race-neutral justification, they have to establish that that is a race-neutral justification. No, no, Puckett tells us that's exactly wrong, right? The Supreme Court has exactly rejected that argument, right? That what it says is the government must put forward a facially neutral reason that the reason for the strike was race or gender or whatever it might be. Well, but if the government, for example, says, I struck him because of his race, that's not a race-neutral reason. And so that would be a situation where the government has to establish something, has to say something meets some standard. It has a burden of production, right? They have to give some evidence, right, that there was a race-neutral reason. That's correct. Well, could we assume for the sake of this conversation right now that we disagree with you and believe that your client had the burden? What do then, can you still, can your client still prevail? Yes, Your Honor. I would like to, I do believe that the district court was mistaken in the factual finding that we did not carry the burden because the record here simply does not show a valid, voluntary, intelligent, knowing waiver of appellate rights. There's ambiguity and confusion throughout the record, but I would certainly point the court directly to JA 37 and during the removal hearing where the immigration judge says, do you want to accept this as a final order or appeal it to a higher court? And Mr. Kassaraman said no. But can, so help me understand here. Except for a minute that I agree there's some ambiguity in that and that one could read that in a variety of ways. Why would we think that the district court committed clear error in reading it the way that it did? Which seems like the better way of reasoning, not like we're totally required. I can imagine a district court reading it a different way and us being on review and saying that's not clearly erroneous either. But why, why would we read what, as you describe, sort of is maybe ambiguous, or at least there is an ambiguous reading of it, and find clear error by the district court? I think because there's such clear ambiguity and deep confusion all the way through this and the context does not support that reading to a degree that the court can have any confidence or certainty in the district court's factual finding reading this. But if we have no confidence or certainty, right, this whole point of clear error is when we lack certainty, right, that means we sort of have to have certainty the other way in order to find that the district court was clearly erroneous in its fact-finding that, you know, what was under, what was said here was understood given the context. I don't believe the clear error standard is quite that high. I don't think it requires absolute certitude on the other side. It doesn't. You just used the word certainty, right? I was using your word, right? But like your point is we can't have certainty that the district court was right. That's maybe not quite opposite of the standard, but that's basically opposite of the standard, right? Because we got a clear error, you know, maybe the district court, like, could have reached either result here if it was truly ambiguous, but... I don't think we're in equipoise, Your Honor, and I think, I don't have the quote in front of me, but I believe the standard language for clear error review is a firm conviction of the mistake has been made. And I think that's what we have here, that there's so much undermining that finding that, and this is such a small thread to go on, that it's not really in equipoise. And we also have the unrecorded final question that's not in the transcript. The government didn't even mention it in its brief, unfortunately, that we don't know what was left at the end of the hearing, what his final question was. And... The problem is that that hurts on the burden, right? Because your client presumably could have put in evidence as to what that question was, or offered some allegation there, but what... There's not much we can... If we're right, and I accept that you have an argument that you don't bear the burden, but if you bear the burden, what do we do with an unknown? And how does that help you meet your burden? Well, I think it further undermines any sort of contextual argument that this was all crystal clear, and that he understood what was going on and what he was waiving. We have this gaping hole, and we can't look at that and say, oh, well, obviously he understood what he was waiving and what this process... What appellate rights were available, when it's just such a thin reed for the court to hang its hat on. It can't support the finding that it made. And again, when we also pair up the first removal hearing, where Mr. Castro-Alemán was so confused about what he could do to raise an asylum claim, and the immigration judge seemed to give him some misadvice or not, disabuse him of confusion there. It's just replete throughout this record that he doesn't really know what's going on. He's uneducated, uncounseled, and the government has a lawyer there that could have cleared all this up and didn't. And so there's just not enough in this record to support that finding. We think this is a case where the burden of proof, the allocation of the burden of proof matters, because if the burden were on the government to prove the opposite, to prove that this is a clear, intelligent, knowing, valid waiver, that it could not meet that burden. That's why we've urged the court to give us a clear holding one way or the other, and either affirm or remand on that basis, because this case really rises or falls on the placement. But with the time I have remaining, I do want to point out one thing in case the court would like to question the government about it. The Palomar-Santiago decision from the Supreme Court completely forecloses our argument here. We've explained in a reply brief why we don't think that's the case, but you don't have to take my word for it. This court has already said so in a case called Herrera-Pagoda, which unfortunately I didn't catch it in the reply brief, but the government cited it for another purpose in its brief. And Herrera-Pagoda at footnote eight says very clearly, rejects this exact same argument, and says Palomar-Santiago didn't address this question, does not preclude this exact same argument. And so in Herrera-Pagoda and in Palacios-Arias, which is another case that we cited in the reply brief, this court did not treat Palomar-Santiago as any kind of bar to this kind of claim. So again, I apologize for not catching footnote eight. This is just the procedural substantive line that you're trying to draw. Yes, I think so. And in terms of whether a defendant can be excused at all from satisfying the exhausting administrative remedies. Can you help me understand this? You just know these cases better than I do. It's a little odd to talk about this, and I know courts use the term excused, but it really seems like it's like satisfying, right? Like if he was denied the right to appeal, then in that sense, D-1 is satisfied because there's no available review. But why do some courts seem to use the word excused when it really seems to me like what we're saying in all these cases is satisfied? Do you see what I'm saying? Because the question is whether the right to appeal is available or not, right? That seems like a totally easy conceptual idea, but then courts say it's excused. What does that mean? Where does that come from? You can say I have no idea. It's our problem, not yours. Well, my supposition is because it is a fact that he did not file an appeal, and so I think the courts have looked at that. Well, he is excused from having to do so because an appeal was not legitimately available. But that's just D-1 says, right, did he take advantage of all available, you know, review, right? And so we're just asking the question of like whether it was available. I mean, it just seems odd to talk about excusing D-1 and D-2 when the analysis is plainly, it seems like to me, asking was it available or not, and that is D-1 itself. I think that's correct. The one thing I would like to is my time winds down. I wanted to ask you about D-3, the fundamental unfairness. How, under what situation, based on with this criminal record, his, I think he applied, he would be applying for asylum 40 years later. Under what situation are you gonna be able to get on that under fundamental unfairness? Would he be able to obtain asylum? Well, partly we don't have a full record because he was never really afforded the opportunity to present the claim, so I can't say here today everything that he might have been able to bring forward. What I can say... Why do you say he wasn't afforded the opportunity to present the claim in the district court? Well, if I may finish... You certainly may, because I'm interested in her question too, and you will give you a full chance to answer it. But why do you say he wasn't afforded... I mean, you made the claim below. It seems like to me you had the opportunity to present it. So what I'm saying is that if he had been... If everything had gone the way that we argue that it should have gone, he might have been able to present more evidence than we have at this point. But... To present more evidence at... You mean at the original deportation? That's correct. But D-3 tells us that we've got to look at it in hindsight, right? No, I understand. I'm just saying... Give up all hope of a better yesterday. No, I understand that. I'm just saying that I wish the record were fuller than it is now, but what we have... Can you go back to her question? Right. What we have on this record is that because of changes in the political circumstances in El Salvador, he alleged a reasonable, credible fear of being returned there, and so... That was in 2014 and he didn't apply for asylum at that time, so that's why I'm curious as to what support, what case law, what support do you have based on his applying 40 years later? If he... Let's say we said that it wasn't valid and it was involuntary. When we get to this fundamental unfairness, how does he... How is he able to be successful in his asylum claim? With the criminal record, I think that for DUIs, two of which were felonies, an identity theft, he applies 40 years later than when he's eligible to apply. How... What cases support, for purposes of this fundamental unfairness? Because I believe he has to prove all three. Yes, that's correct, and so my argument there is that there's not a specific time bar under the claim that he can file for asylum within a reasonable period after a change in circumstances. Our argument is that he would be able to do so even at this date, and that a claim for asylum necessarily includes a claim for withholding of removal, and immigration judge is automatically required to consider that as well, and that's mandatory relief if the non-citizen meets the standard for that. It is a higher standard, but it's mandatory relief, and there's not an absolute bar based on his convictions. It's a factual bar that the immigration judge would have to look at the particular facts of those cases, and so just the fact that it's a DUI does not necessarily bar him, and so that's our argument. Now, we think that... Can I ask you maybe a threshold question here? You mentioned Herrera Pagoda earlier. It seems to suggest this question that you've raised about developing the record on asylum is not a constitutional claim at all. It doesn't seem to suggest it. It actually says there's no constitutional right to be advised of eligibility for discretionary relief, so how can we look at that for a D3 purposes at all? Our argument there, your honor, is that because an asylum claim also includes, necessarily includes, a claim for withholding of removal, which is mandatory relief, that that wouldn't apply, and also... So in other words, Herrera Pagoda is wrong because they failed to recognize this sort of implied inclusion of a different claim? Well, it's not implied. It is explicit under the immigration regulations that... No, but it's implied that it's included within the same, within the asylum claim. Well, and I'm saying it's explicit. It's not implied under the immigration regulations. The immigration, it's deemed to include, and so an immigration judge knows that if someone says asylum, they're also applying for withholding a removal, which is mandatory relief, but I think we don't even need to get there. Isn't there also a reasonable probability that he could have been granted voluntary departure? Well, we acknowledge that voluntary departure is discretionary, and so I think that that... But he could have been granted voluntary departure, even if he was denied the asylum claim? I think that's correct. And wasn't allowed the opportunity to present that case? That's correct, and I don't think we even need necessarily to get there because he would establish prejudice simply from being denied the right to appeal. That's our argument, primary argument there, so thank you very much. Thank you, counsel. Mr. Day, happy to hear from you. Good morning. May it please the Court. I will just start on the fundamental unfairness prong to pick up where we left off. I do believe, as Judge Richardson noticed, that Herrera-Pagoda says an alien has no constitutional right to be advised of his eligibility for discretionary relief, and I take a different view that asylum is a form of discretionary relief, and that's referenced in this Court's decision in Mayhaw v. Sessions at 866 F. 3rd 553 at page 578. What's your response to his argument that the regulations tell the district court, or excuse me, tell the immigration judge to also consider this other form of relief any time an asylum claim is raised? I understand that, Judge, but I think what the claim here has been from the start is the immigration judge's failure to develop the record with respect to asylum, not with respect to withholding of removal, which is a separate form of relief that the defendant could have pursued but did not. So on this record, what we're talking about is asylum, and that is plainly a form of discretionary relief. Herrera-Pagoda answers the question of whether that's a due process right, and L. Shamian and this Court has repeatedly said under D. 3 to show fundamental unfairness, the defendant must show not just some sort of statutory violation, but a due process violation. That's prong one. Prong two is that the defendant has to show prejudice. That means that for the violation, there was a reasonable probability that the defendant would not have been deported. I think Judge Benjamin's questions about this one-year time bar and the fact that the defendant had multiple DUI convictions, including felony convictions and identity conviction, show clearly on this record that the defendant would have been barred from obtaining asylum even if he had shown an initial threshold eligibility. And what about voluntary departure? Yes, Judge, so I don't believe they developed that argument in the record, but I do think that Herrera-Pagoda, again, plainly concludes, and Herrera-Pagoda was in fact about the defendant there claimed that the immigration judge had an obligation to develop the record with respect to voluntary departure, and the conclusion there was that's not a due process violation even if there was such a failure. So here on this record, though, the immigration judge, in response to the defendant's request for voluntary departure, so the defendant did make the affirmative request, the immigration judge analyzed his DUI history, said you have multiple DUIs. I don't think you're a good candidate for that, and then the immigration proceedings went on. So there was a request. It was denied based off of the defendant's criminal history, which was extensive. Shifting gears a little bit, I do want to go back to the district court's factual findings, which is this court should review for clear error, as my colleague on the other side recognized. The district court... Can you start with this Palomar-Santiago argument? I'll give you the warning, I'm skeptical, but do you think Herrera-Pagoda footnote 8 answers it first, and then second, help me understand why you think a case addressing like a substantive challenge encompasses procedural challenges? Yes, Judge, absolutely. So at the end of footnote 8, I just looked at it, just said we declined to reach the issue. It didn't say that, you know, resolve the issue one way or another. It just declined to reach the issue. So that's the first point about the footnote in that decision. A similar argument was on this distinction between procedural and substantive challenges was addressed in Palomar-Santiago itself. There, the defendant in Palomar-Santiago did claim a substantive error on behalf of that the immigration judge made, but he tried to recast it as a procedural error, thinking that might gain him some advantage. The Supreme Court addressed that argument and rejected it. In essence, it said when a defendant in a 1326 prosecution raises either a substantive challenge or a procedural challenge, both are challenges, and 1326 language of the text of the statute covers all such challenges to the validity of a prior removal proceeding. And so the Ninth Circuit has explicitly found that as well, saying that Palomar-Santiago did not limit its holding to an immigration judge's substantive errors. Just on this point, and I think it illustrates that there really is no difference between a procedural and a substantive error when it comes to availability, the defendant relies on Noreen v. Holder as to the validity of his waiver in immigration court. That was a decision that the Fourth Circuit made on direct appeal from the Board of Immigration Appeals. And what it shows affirmatively is that Mr. Castro-Aleman could have been Mr. Noreen. So he could have appealed the immigration judge's appellate waiver to the Board of Immigration Appeals, and then if he got an unfavorable decision there, he could have appealed it to the Fourth Circuit. So he had appellate remedies available to him that he could have pursued, but he chose not to. Likewise, in this case, the defendant claims that the immigration judge failed to develop the record with respect to asylum. He relies on the from the BIA to the Fourth Circuit. Again, affirmatively showing that non-citizens such as Mr. Castro-Aleman have pursued on appeal, and immigration judges allege failure to develop the record. The right to appeal in immigration court has been on the books for decades. This is not a game of hide and seek. Non-citizens with reasonable effort should know to pursue this right if they want to pursue it. But going back, if the court doesn't mind. Can you answer the question that I asked your colleague, and you can say you have no idea, it's totally a fine answer. Why we talk about this is excusing compliance on D-1 and D-2 instead of like complying with D-1. I mean, D-1 asks whether it's available. All of the inquiry goes to whether it's available or unavailable. Why do some courts use the term excuse compliance when it really seems like what it is is the alien, you know, meeting the requirement of D-1 by showing that they did everything that was available to them, not the things that were unavailable? I understand, Judge. Yeah, I would be speculating. It might go back to the Supreme Court's decision in Mendoza-Lopez that decided that when a non-citizen is deprived of judicial review in immigration court proceedings, then they, as a due process right in a 1326 prosecution, have an opportunity for judicial review of the validity of those proceedings. That's generally the case the court cites when they go to, when they use the word excuse. But I will say what Palomar Santiago clarified is that there is no such excusal doctrine. What you need to do is start with the text of the statute. And not every invalid waiver will necessarily render an appeal right in immigration court unavailable. And I think that is where the cases that go with this excusal doctrine go wrong. Because, well, in this case we have a valid appeal waiver. So it's clear on this record that not just were the remedies on the books for decades and generally available, but that this defendant knew that he had those options. But if there were such an invalid appeal waiver, I think that, you know, it would be an uphill argument. But, you know, depending on the circumstances of the case, an appeal right could still be available to a defendant. And so I think the excusal doctrines have been overruled by Palomar Santiago. They were wrong. I think the question instead is whether or not an appeal is available to non-citizens as that term is used. In 132061, the government argues that the term available should be afforded the same meeting as the Supreme Court's case in Ross v. Blake. Obviously a different statute under the PLRA, but it analyzes the same term also in a mandatory exhaustion provision of the PLRA. I'll shift gears. Yeah, you got anything else? Not on Palomar Santiago unless, of course, it has questions. I'll shift gears then just to highlight the District Court's factual findings and what it relied on. I disagree with my friend on the other side that this is an ambiguous record. I will acknowledge the compound question and if it were just the compound question and simply the answer no, I think we would be in a much more difficult case. But we are not there. What we have in this record are multiple instances in which the defendant said, in sum and substance, what do I have to do so that you can deport me? What do I have to do so that I can be sent back to El Salvador? The District Court relied on those statements in finding that, quote-unquote, critical context reveals that the defendant did not want to appeal. For example, after the immigration judge declined the defendant's request for voluntary departure, the defendant asked, what do I have to do so that you can deport me? That's a JA 36. Then after the immigration judge informed the defendant that he could appeal his removal order to a higher court, the defendant said, what do I need so you can send me back to my country? The District Court judge didn't stop there. He looked at the broader context, facts, and circumstances of what was going on. This defendant had been in ICE custody for six months. He had faced lengthy removal proceedings that involved all sorts of investigations and inquiries. And at the end of the opinion, the District Court said... What about, what about when he, his argument about this missing portion of the record where he says, I have another question. I'm curious to hear your response, your argument regarding that. Does that change anything here? I don't think it changes anything here because there's no evidence in the record that that missing portion had anything to do with the, with waiver, first off. And what we do have that, that does address waiver is clear that the defendant didn't want to appeal but instead he wanted to be deported expeditiously. And so if, if there were simply an allegation that, you know, if there was no discussion of waiver, say in a different case, different hypothetical, no discussion of waiver from the immigration judge, the defendant didn't bring it up, and at the end, you know, the proceedings were cut off, then we would probably be in a, again, a tougher case where burden might control. But that is not what we have here. What we have here is an explicit reference, not only to accepting it as final, but immediately explaining that if you accept it as final, you will be removed, and then juxtaposing that option to appealing the removal order to a higher court. The defendant said no, what do I need to do so that you can send me back to El Salvador? On this record... What do you do with his multiple questions or statements about his inability to locate or put his hands on his father's death certificate? To me that shows that he was confused and didn't know that he had, I had to bring the asylum claim, and was never told, well, you don't actually need a birth death certificate in order to bring that claim. The government concedes that he did not actually need to bring a death certificate. But he was never told that, right? In fact, he, on multiple occasions, stated he can't find it, suggesting that he believed that he needed it, and was never told, no, you actually don't need it. That's correct, Judge. So he believed erroneously that he, that any asylum claim was foreclosed. I don't know if that's true, and it's certainly not a factual finding that the district court found. Even if it were true, taking it at Your Honor's hypothetical, at worst, for the government, that would be a statutory violation. Under Herrera-Pagoda, he would not be able to show a due process violation, and for the reasons the government's argued about the one-year time bar and this particularly serious crimes, there's no way, even if he had presented an asylum claim, that he would have gotten asylum. I understand that he would be unlikely to prevail on an asylum claim. Mike, the question really goes to whether he had waived, right? Because he just seems confused. Whether he had waived his asylum claim, or whether he had waived his appeal right? His appeal right. I understand. I will say there's no evidence that tying his lack of asylum to his desire to appeal. Like, in this record, he does not evidence a desire to appeal. He doesn't say, I disagree with you, Judge, or can I have more time? In fact, the immigration judge in this case offered this defendant, at the time a non-citizen, more time to apply for asylum, and the defendant said, I'm, you know, I would rather go back to my country. What do I need to do to go back to my country? This was the second of two hearings that the immigration judge held. The first hearing, the immigration judge accepted the defendant's claim of fear, said I will give you a few weeks to put your application together, made sure the defendant had the asylum application. The defendant never applied for asylum. He never submitted the application. I understand, Your Honor's point, that it might have been based off of some confusion, but he did not end up applying for asylum. Even when, even so, the immigration judge at the second hearing said, do you need more time? The defendant said, no, I just want to know what I can do to be sent back to my country. So I don't think that there's any tying his potential confusion about the asylum process to a desire to appeal, because there is no evidence on this record that the defendant wanted to appeal. I will just briefly go to the burden of proof. I think, regardless of which party bore the burden, the outcome is the same either way, based off of what I was just discussing about the validity of the appeal waiver. But I think, you know, the government urges this court to follow the first, third, fifth, seventh, and tenth courts of appeals, and a chorus of district court decisions in this circuit that apply the burden on the government. I think this flows directly from the text of the statute, as Judge Richardson noted, that the defendant bears the burden of proving each of 132060's elements. It only follows from there, if he's seeking some sort of exception to those elements, that he ought to bear the burden of proving an exception. And I do want to highlight what the Fifth Circuit recently highlighted in its terms. A contrary holding would irrationally bifurcate this statute, and the burden is approved. So, and this issue is presented squarely here in this case. The defendant asks him to be excused from D1 and D2, and that the government should bear the burden of proving the validity of the waiver under D1 and D2. At the same time, the defendant claims that this invalid appeal waiver is one reason that he's allowed to satisfy D3. Under the text of the statute, the defendant clearly bears a burden approving D3. So, in other words, he bears the burden of proving the invalidity of the appeal waiver under D3. So, if the court were to adopt the defendant's approach, it would be applying two opposing burdens of proof to the same issue under different prongs of the same statute. That approach isn't supported by the text of the statute, and I think it's contrary to common sense. Unless the court has any further questions, I'd ask that the court affirm the district court's decision. Thank you, counsel. Mr. Brunt, we're happy to hear from you. Thank you, Your Honor. Just a couple of points very briefly. I think the government places too much weight on Mr. Kestrel-Alleman's statements at the removal hearing about the logistics of getting back home and does he need a passport. All that shows is that he's concerned about the next steps, and as the analogy that we put in the briefing, if someone at a criminal sentencing is asked the same compound question about accepting the result or appealing it, and the person just says, well, you know, are you going to take me to prison? Do I have to show up myself? That doesn't necessarily indicate that they accept everything that's happened, and it's also not, at least to an uneducated, uncounseled non-citizen, it's not necessarily inconsistent to think that they would be deported but still be able to appeal. It doesn't necessarily follow that he thinks that by submitting to deportation that he's foregoing any other claims for all time. One other thing, a couple of things that I would just like to note is that not every case that raises this issue is going to present these transcribed removal hearings in front of a judge. A lot of these cases are going to come out of the context of a very quick, stipulated signing of a piece of paper at the border or at a detention facility with a border patrol officer, perhaps, and in those situations it would, as the Ninth Circuit said in the Gomez case, skew the government's incentives and create an insurmountable hurdle for the defendant to put the burden on the defendant to say, oh, that waiver's not valid when the government presents a signed piece of paper because it would really be impossible for the defendant in that situation to track down the evidence and call the officer to account and to contest all this when it would be very easy for the government to do so. And it creates the incentive on the government to make sure that there's no confusion whatsoever. And this is why I think Judge Berner's questions are apt, that there is confusion replete through this record and it's hard to read the transcripts of these hearings and come... But you would agree on that issue that the IJ offered him, I think, an additional two weeks after, and this was, I think, the second time? He did, but he also said that he had to complete the asylum application in English and submit it by fax, which is a high hurdle for this person to meet. But also, he could have given him two years instead of two weeks and he wouldn't have been able to do it because he didn't think that he had what he needed to do it and the immigration judge never told him otherwise. I think that, really, ultimately where we come down on the burden issue is that if this record isn't enough for us to meet our burden, to show that the waiver is invalid, it's hard to imagine what evidence would be where there was not a clear question, there was not clear advice about the consequences and the availability of appellate review and there just wasn't a clear answer that something that the government could have cleared up at the time. And so, it's not incongruous under the law to have shifting burdens in certain circumstances and we argue that this is a case where that should happen. And unless the court has any further questions... I do have one more question. On the fundamental unfairness, you earlier said that he could potentially apply for withholding of removal. Was that argued below? I don't believe it is, but I believe it is implicit within the asylum claim. It is a necessary adjunct and so if he had been able to apply for asylum, that would have necessarily included a claim for withholding. So, that's how we arguably satisfy that. Thank you, Your Honor. Thank you, counsel. We will come down and greet counsel after Ms. Edwards closes. This is out for the day. This honorable court stands adjourned. Signed by God Save the United States and this honorable court.
judges: Julius N. Richardson, DeAndrea Gist Benjamin, Nicole G. Berner